Braun, Elihai — *My Post Conviction attorney*

**From:** David Whitmer <DWhitmer@oceancitymd.gov>
**Sent:** Tuesday, December 13, 2016 10:31 AM
**To:** Braun, Elihai
**Subject:** RE: Subpoena

Mr. Braun,

Mr. Neisser's interview with me was audio and video recorded, however during an upgrade of our recording system around the time of the interview, the recording of my interview with Mr. Neisser was lost.

I will be present in court on January 6th per the subpoena.

Please call with any questions.

David

*[Sticky note: E-mail From Detective Dave Whitmer to My Post Conviction atty Eli Braun - Public Defender]*

-----Original Message-----
From: Braun, Elihai [mailto:EBraun@opd.state.md.us]
Sent: Thursday, December 08, 2016 11:37 AM
To: David Whitmer <DWhitmer@oceancitymd.gov>
Subject: Re: Subpoena

Det. Whitmer, I sent this email and attachment yesterday but I got a return-message that made me doubt whether it was sent, so here it is again, just in case. I got your voicemail and just left you a voicemail. I'm happy to talk about the case--today or some other time. Best way to reach me is cell: 513-646-0900. Thanks again. Eli Braun _____
From: Braun, Elihai
Sent: Wednesday, December 07, 2016 5:38 PM
To: 'Dwhitmer@oceancitymd.gov'
Subject: RE: Subpoena

Det. Whitmer,

Thanks very much for being available on Jan. 6, 2017, at 9:30 am, in case 23-K-15-000110. Let's talk by phone before the hearing date and I can update you on the post conviction claims. I'm grateful for your attention to the case.

I modified the subpoena slightly and re-attached it, to ask you to bring your file in 2014-007734 and your video/audio-recorded interview with Mr. Neisser. For some reason, a recording of that interview (or any other interview) was not included in the material the OCPD Records Division sent me in October and November.

(I just saw the subpoena is addressed to "Whitmar" rather than Whitmer. Please excuse our clumsy fingers.)

1

STATE OF MARYLAND



LAWRENCE J. HOGAN, JR.
GOVERNOR

**OFFICE OF THE PUBLIC DEFENDER**
101 WEST GREEN STREET
P.O. BOX 276
SNOW HILL, MARYLAND 21863
Ph. (410) 632-1933    Fax (410) 632-0943
Toll Free 1(877) 430-5187

PAUL B. DEWOLFE
PUBLIC DEFENDER

BECKY FELDMAN
DEPUTY PUBLIC DEFENDER

CHASITY N. SIMPSON
DISTRICT PUBLIC DEFENDER
FOR DORCHESTER, WICOMICO,
SOMERSET & WORCESTER

**RECEIVED**
JAN 23 2017
Attorney Grievance
Commission

January 19, 2017

Attn: Ms. C. Shea McSpaden, Assistant Bar Counsel
Attorney Grievance Commission of Maryland
200 Harry S. Truman Parkway, Suite 300
Annapolis, Maryland 21401-7479

Re:  Drew Neisser
     File No. 2016-2525

*[Handwritten note on sticky note: "Kristina Watkowski's responses to my Grievances filed against her."]*

Dear Ms. McSpaden:

I recently received a letter and complaint concerning my representation of Mr. Drew Neisser. I represented Mr. Neisser in his Worcester County Circuit Court Case No. 23-K-15-0110 as his assigned Assistant Public Defender. Mr. Neisser alleges ineffective assistance of counsel in a petition filed for post-conviction relief, and then later in an additional petition that was filed by an attorney on his behalf. Most of these issues were addressed at a recent Post Conviction hearing held in the Circuit Court. The court's opinion has not yet been received.

*[Handwritten star/asterisk mark in margin]*

In his cover letter, Mr. Neisser suggests I be investigated, along with the prosecutor, my "buddy" Mrs. Karsnitz. Mr. Neisser also informs you that he ran into his buddy Daniel Kerstertter who also complained of his lawyer which prompted Mr. Neisser to reach out to you. I represented Mr. Kerstetter and he made a similar statement alleging Ms. Karsnitz and I were "best friends." Our friendship does not interfere with the duties and responsibilities of our jobs. If anything, our good working relationship yields more favorable results for my clients. I think Mr. Neissier is tacking on a complaint that Mr. Kerstetter seemed to have.

*[Handwritten notes at bottom:]*
The same; attorney - Watkowski
asst States atty - Cuihle/Karsnitz } coincide
Charge - Domestic Violence
Outcome
Complaint

Mr. Neisser alleges that I failed to subpoena two officers that raided his home prior to the events that occurred as the subject of this trial. As I recall, Mr. Neisser was never able to give me a date of the raid or an officer name to locate this information; therefore, I had nothing to go on and did not subpoena the "raiding" officers. Similarly, Mr. Neisser alleges I did not get police reports on previous incidents. Again, Mr. Neisser was unable to give dates or officer names, other than Detective Whitmer. I spoke with Detective Whitmer prior to the trial and determined that he would not be useful to the defense in this case. Actually, Detective Whitmer could have been very damaging to my client so I excused his presence.

Mr. Neisser also alleges that I failed to object, or ask for a mistrial, when Ms. Santamaria admitted she was under the influence of a narcotic. If that were the testimony I would *not* have objected because it tends to discredit the state's victim in the recollection of the facts and anything that makes the State appear less credible is good for the defense in my opinion. Mr. Neisser alleges I never questioned the State's witness about her criminal record. I do recall Mr. Neisser alleging she was a drug dealer and that she had killed her prior husbands but I was unable to come up with anything that supported these facts. I do not recall any impeachable offenses to reference in Ms. Santamaria's questioning.

Mr. Neisser also alleges that when questioning Ms. Santamaria I failed to ask her about previous false testimony. I do not recall discussing with Mr. Neisser any instance where Ms. Santamaria testified in court. It was not until after a petition was filed by an attorney for post-conviction relief that I was aware of an actual report insinuating that Ms. Santamaria should have been charged with providing a false statement. Charges were never filed and I was never provided the report prior to trial.

Mr. Neisser alleges I failed to object to the Ms. Santamaria's testimony concerning the effect her injuries had on her. My style is let her tell her own story and then present that which contradicts her at later point. The issues with the photos and postings on Facebook were raised in cross-examination. The argument by defense counsel was not whether or not the injuries occurred; but rather, how they occurred.

Mr. Neisser also alleges that I failed to object to the jury instruction given by the Court despite my submission of the standard instruction. While I did not object on the record and the appellate court declined to exercise their discretion to engage in plain error review, the court did note that even if the issue was not affirmatively waived, the court was persuaded that the deviations from the standard instruction in this case did not affect Mr. Neisser's substantial rights and that it did not alter the State's substantial burden of proof.

Mr. Neisser alleges that I refused to go to 130th street and take a picture of where the supposed car accident occurred. The location, specific to a parking bar with a sign, was not as Mr. Neisser had described – to take a picture of that which is not how your client says it was would be to discredit your own client. Mr. Neisser never suggested that it had been removed. Mr. Neisser never requested I speak with a bar owner. Mr. Neisser alleges he advised me that Ms. Santamaria sold drugs at "that bar" but I do not know what he is referring to because I have never worked at any of the locations Mr. Neisser has described. Clearly Mr. Neisser is mistaken and is attempting to use half-truths to discredit me as an attorney. Mr. Neisser's did advise me that Ms. Santamaria sold drugs in the Baltimore area but I did not uncover any distribution convictions.

Included with the police reports are notes made by Mr. Neisser. First of all, I was unaware of the report. Detective Whitmer never disclosed to counsel that there was a report from a previous incident. That issue is being addressed as a *Brady* violation in the post-conviction proceedings. Also, I never told Mr. Neisser that it did not happen, nor did I say it was not relevant. In my conversations with Detective Whitmer, I determined his presence at Court as a defense witness would not benefit our theory of the case, and could damage it so I excused his presence as a defense witness. Also, I did have a toy Ocean City Police car on my desk, as well as a toy dump truck in a drawer along with crayons and coloring pages. I have a child and I keep these items in my office – mainly for the children that accompany their parents to the office so that the young ones can be amused while their parents are applying for services or meeting with attorneys. This so called "toy" is a 1/64 diecast metal limited and numbered specifically made for Ocean City Police Force for giving to specific FRIENDS and charity auctions raising money for the police. Auction price can vary anywhere from

Upon my review of Mr. Braun's petition filed on Mr. Neisser's behalf, he alleges I failed to raise the car expense as a possible motive. I did not raise that in my argument and still would not in this case. There was never a specific request made by my client to do so. Mr. Braun also alleges that I undermined my client's credibility. Mr. Neisser did that for himself on the stand. Because both the State's witness and the Defendant lost some credibility during their testimony, I used a "gray area, somewhere in the middle" approach suggesting when you don't know who to believe, that is a not guilty. It is a successful strategy in many of my cases that present themselves in this way and it was my strategy for this case as well. Mr. Braun also alleges I failed to use maps of the area and parking bar, again the parking bar did not exist the way it was described by Mr. Neisser and that could have hindered his credibility.

I hope that this information is helpful. If you have any questions or concerns you may reach my office at 410-632-1933 extension 306.

Sincerely,

Kristina L. Watkowski, Esq.
Assistant Public Defender

Ocean City Police Department

OCA: 2014007734

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: UNFOUNDED  Case Mng Status: NA  Occurred: 10/03/2014
Offense: AGG ASSAULT W/ FIREARM

**withheld from atty Watkowski**

Investigator: WHITMER, D. W. (55116)  Date / Time: 01/14/2015 11:12:19, Wednesday
Supervisor: CASE, B. L. (8165)  Supervisor Review Date / Time: 01/21/2015 07:09:44, Wednesday
Contact:  Reference: Supplement

**70 minute Interview Destroyed**

1) The video was 5 minutes and 4 seconds long
2) Neisser's hands were visible to the camera throughout the entire video
3) Neisser did not appear to have anything in either of his hands.
4) Santamaria could be seen performing oral sex on Neisser throughout the first portion of the video.
5) At one point during the video Neisser stopped Santamaria from performing oral sex on him and began to masturbate while standing in front of Santamaria.
6) When Neisser began to masturbate, Santamaria could be heard sniffling. I was unable to determine from the video if Neisser was crying or simply sniffling.
7) While Neisser was masturbating, Santamaria stated "I'm not giving permission to..(something inaudible.)
8) Santamaria stated a second time "I'm not giving you permission to do this".
9) Neisser continued to masturbate until he ejaculated onto Santamaria's chest, neck and face.
10) As Neisser was ejaculating Santamaria could be seen rubbing the back and front of Neisser's legs.
10) Santamaria could be seen wiping semen from her face with her right hand and placing it in her mouth.
11) Just before the video ended Neisser and Santamaria were laughing and speaking with each other.

It appeared to me at the end of the video that Santamaria was not in distress in any way.

During the month of November, I conducted various follow ups in reference to this case.
On October 29th, 2014, I met with Edmondson. Edmondson stated that he did help Santamaria get a key to her unit and drove her to several locations for work. Edmondson stated that the met with Santamaria shortly after she left Neisser's residence. Edmondson stated he helped Santamaria purchase shoes. Edmondson stated that stated that she was in a "messy situation".

I showed Edmondson the photograph of the injuries to Santamaria's face that Santamaria stated occurred on or about October 3rd, 2014. I asked Edmondson if Santamaria had these same injuries when she was with him. Edmondson stated "No Way!" When I asked Edmondson what he meant he stated that he would have never taken Santamaria to see his customers if her face looked like it did in the picture.



After speaking with Edmondson, I drove by the house in West Ocean City where Santamaria reportedly stayed. I observed Santamaria standing in the yard of the home speaking with someone.

I stopped and asked Santamaria if she would speak with me. Santamaria sat in the front seat of my police car and I interviewed her a second time. I began to question Santamaria a second time regarding the report she made. Santamaria insisted that pointed a gun at her and forced her to perform oral sex on him.

I asked Santamaria about buying the toy gun for Neisser. Santamaria stated that that was not the gun Neisser used. Santamaria stated that Neisser had a second small black revolver. I told Santamaria that we had searched the trailer and did not find any other gun. Santamaria insisted that Neisser pointed a gun at her.

Investigator Signature                                  Supervisor Signature

Page 20

OCA: **2014007734**

Ocean City Police Department

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| Case Status: *UNFOUNDED* | Case Mng Status: *NA* | Occurred: *10/03/2014* |
| Offense: *AGG ASSAULT W/ FIREARM* | | |

| | |
|---|---|
| Investigator: *WHITMER, D. W. (55116)* | Date / Time: *01/14/2015 11:12:19, Wednesday* |
| Supervisor: *CASE, B. L. (8165)* | Supervisor Review Date / Time: *01/21/2015 07:09:44, Wednesday* |
| Contact: | Reference: *Supplement* |

I asked Santamaria about the conversations and her demeanor at the end of the video that Neisser had taken. Santamaria became angry and insisted that ~~Santamaria~~ NEISSER had forced her to perform oral sex on him.

I asked Santamaria numerous other questions regarding the inconsistencies that I had noted in her initial report to me. Santamaria continued to insist that things happened to her as she initially reported.

I told Santamaria that I had recovered some of the items that she left at Neisser's residence. I told Santamaria where she could recover her property.

I submitted the following items to the Ocean City Police Department Records Division.

1) Original Search and Seizure Warrant for Neisser's residence.
2) Signed Return of Service for warrant
3) Copy of photograph of Santamaria's reported injuries

A copy of the video was submitted to Ocean City Forensic Services Division. See supplement by OCPD FSU.

Based upon the investigation that I have conducted I have determined that while Neisser and Santamaria had an argument of some sort, which caused her to leave Neisser's residence, the facts regarding the assault and sex offense as reported by Santamaria were not accurate.

There are no facts of any sort that support the claim that Neisser pointed a handgun at Santamaria. There is no evidence that Neisser ever even possessed a handgun.

There is also no evidence to support the claim that Santamaria made regarding the forced oral sex. While the video shows Santamaria either sniffling or crying about something, her demeanor at the end of the video indicated to me that Santamaria willingly participated in the oral sex. Santamaria could be seen rubbing Neisser's legs as he ejaculated and she was conversing and laughing with Neisser at the end of the video.

Based upon the numerous inconsistencies in Santamaria's original report, this case will be closed and marked unfounded. No further investigations will be conducted.

✱ I will be charging Santamaria via application for filing a false police report and other charges.

*Denies any video or audio recordings of Sheila Santa Maria's false report or 2 person to person interviews. That is impossible.*